Rockingham, }
Dec. 7, 1909. }

## LADD & a., *Trustees,*   v.   LADD & a.

A trust created by will may be executed by a majority of the trustees, unless the instrument provides in express terms or by necessary implication that they shall act as a unit.

Where trustees under a will are charged with the management of woodland, they may sell trees which have attained their growth, with or without authority from the probate court, whenever in their judgment such a course will be beneficial to the estate.

Where a will provides that the occupants of a farm devised in trust may remove only such trees as shall be needed for fire-wood, funds derived from a sale of wood and timber by the trustees, or accruing from their settlement of a claim for its negligent destruction, form a part of the trust estate.

PETITION, by the trustees of the estate of Lydia W. Ladd, asking for a construction of certain provisions of her will and codicil relating to the occupation and administration of her homestead farm. Transferred from the April term, 1909, of the superior court by *Wallace*, C. J.

By the ninth clause of her will, the testatrix gave her homestead farm, household furniture, etc., in trust for the use of certain relatives, and directed the trustees to " keep the roof and exterior of the buildings upon said premises in good repair and painted, and the occupants, the interior thereof. . . . The trustees shall

also pay the taxes assessed upon said premises, out of my estate. The occupants of said premises shall keep the fences in good repair at their own expense." By a codicil, she provided that " all repairs . . . upon my homestead estate shall be paid by my trustees out of the income of my estate." Other provisions of the will and codicil material to the questions raised by the petition are stated in the opinion.

After the will was made, Lewis P. Ladd leased an acre of land from his aunt and erected thereon the house in which he was living at the time the codicil was executed. The lease provided that if he ceased personally to occupy the premises his interest in the land should cease, and that if he neglected to remove the buildings they should become the property of his aunt, or of her estate, at such valuation as might be agreed upon. Lewis has ceased to occupy and has notified the trustees that he does not intend to remove the buildings. A fire caused by the railroad damaged the growth on the farm, and the trustees settled the claim for $200.

The advice of the court is asked in respect to the following matters: (1) Who is to pay for necessary interior repairs on the buildings? (2) Does chapter 2, Laws 1901, apply? (3) Who is entitled to occupy that part of the homestead vacated by Lewis P. Ladd? (4) May those entitled to occupy the homestead permit others to occupy under them? (5) May the trustees sell trees which have attained their growth? (6) Who is entitled to the proceeds from the sale of any trees?

*Martin & Howe* and *Eastman, Scammon & Gardner*, for the plaintiffs.

*Frink, Marvin & Batchelder*, for the defendants.

YOUNG, J. 1. The will provides that the unmarried daughters of the testatrix's brother Samuel, and his son Lewis, or such one of Samuel's unmarried sons as the unmarried daughters select, may occupy her farm, rent free, as long as they remain unmarried, and that the trustees shall pay them the income of $6,000 while they live on the farm. The codicil gives Lewis and his unmarried sisters a right to occupy the farm—Lewis as long as he lives, and his sisters as long as they remain unmarried. Lewis is to occupy one half as long as his sisters occupy the other half, but on their death or removal he is to occupy both parts of the farm. The trustees are to pay Lewis and his sisters semi-annually one half the net income of the estate. The sisters are to share in the annuity as long as they live on the farm, but on their removal this half of

the net income is all to be paid to Lewis, and if he dies before his youngest child is thirty years old, to his children until the youngest is thirty years old.

It was manifestly the desire of the testatrix that Lewis and his descendants should occupy the farm until it was devoted to the purposes of the school she established, and it is evident that one of the purposes she had in view in making the codicil was to render such occupation attractive to Lewis. It seems probable, therefore, that when she said " I direct that all repairs . . . upon my homestead estate shall be paid by my trustees out of the income of my estate," she intended both inside and outside repairs. The inference that this provision was intended to limit the funds available for repairs and not to enlarge the duties of the trustees in respect to making them, which may be drawn from the fact that under the will repairs are to be paid for out of the estate and under the codicil out of the income of the estate, is rebutted by the fact that that is the purpose of another provision of the codicil. The clause by which that is effected provides that all charges against her estate created by the will and codicil shall be paid out of the income, and that the balance only is to be divided among her nephews and nieces. Therefore, if the clause in relation to repairs does not enlarge the duties of the trustees, it serves no purpose whatever. There is nothing in the codicil to show that the testatrix had the fences in mind. Consequently they must be maintained in accordance with the provisions of the will.

2. The will—the instrument creating the trust—neither provides in terms nor by necessary implication that the trustees shall act as a unit. Consequently a majority may act in all cases. Laws 1901, *c.* 2.

3. Although Lewis was living in his own house, it is obvious from even a casual reading of the codicil that the testatrix thought of him as occupying her farm, and that living in his own house as long as his sisters live in her house is the occupation she had in mind when she said " I desire that the net income of my homestead farm, . . . during the lifetime and occupancy . . . by my niece Clara and any of her unmarried sisters and said Lewis, shall be distributed as follows."

Therefore, when Lewis abandoned his house to the trustees, he refused to further occupy the homestead within the meaning of the codicil; and the right to occupy the part he formerly occupied is governed by the clause which provides that " at the death of said Lewis, or his neglect or refusal to occupy said farm, then any one of his heirs most eligibly situated to occupy the same (giving preference to his daughter Molly and her lineal descendants) may continue to occupy that part of said estate now occupied by said

Lewis. As to the remainder of my homestead, it is my will that the lineal descendents of my nephew Lewis P. Ladd shall occupy the same, or such of them as may so elect. . . . If my nephew Lewis shall leave no lineal descendants, then it is my will that some of the lineal descendants of my brother Samuel P. Ladd shall occupy both parts of said homestead farm."

That one of the children of Lewis "most eligibly situated" is therefore entitled to occupy his part of the farm; but to occupy it within the meaning of the codicil, the occupant must both live and maintain a home of his own on the farm. If none of the children of Lewis is "eligible" to occupy at present, the trustees will administer that part of the farm as a part of the trust estate until some one of the children is prepared to occupy it.

4. The occupation the testatrix had in mind is personal; that is, she intended that her beneficiaries should not only live on the part of her farm she gave them the right to occupy, but should live in their own homes. At present Clara and Mrs. Ayer have the right to live in the testatrix's house, and the children of Lewis, if they are eligible, in his house.

5. The testatrix gave her farm to the trustees and directed them to keep the buildings in repair and to pay insurance and taxes. She also provided that none of the occupants except Lewis should remove even dead trees that were not needed for fire-wood, and she gave him the right to remove such trees only in the event of his occuping the whole farm. The testatrix therefore must have intended that her trustees should administer her woodlands. Consequently they may sell trees which have attained their growth, with or without the advice of the judge of probate (P. S., c. 198, s. 10), whenever they think that is what ought to be done.

6. The right to occupy the homestead is not an estate in fee and possesses few, if any, of the incidents of a life estate. Consequently the proceeds of any trees that are sold must be treated as a part of the trust estate unless it appears from the will that that was not the testatrix's intention. There is nothing in the will or codicil to show that she intended the occupants of the farm should have any benefit from her woodlands except their fire-wood; in fact, the language she used tends rather to rebut such an inference. Consequently it must be held that any money the trustees receive from the sale of wood and timber is a part of the trust estate, and the income derived therefrom a part of the income of the estate. This is also true of the $200 received from the railroad.

*Case discharged.*

All concurred.