Sullivan,
March 3, 1931.

ELIZABETH S. ROCKWELL & a. v. JOHN W. DOW & a.

*Ira G. Colby, Barton & Shulins* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiffs.

*Francis W. Johnston, Herman Holt, Wade Keyes* (of Vermont), *Henry N. Hurd, Warren, Howe & Wilson* and *Robert P. Bingham* (*Mr. Hurd* and *Mr. Bingham* orally), for the defendants.

PEASLEE, C. J.   This case presents issues as to the jurisdiction of the probate and superior courts, respectively, in the matter of testamentary trusts.   It also involves the interpretation of certain provisions of the will relating to the trust, and some questions as to the methods of administration.

I. General equitable jurisdiction over trusts was conferred upon

the superior courts at an early date. *Parsons* v. *Parsons*, 9 N. H. 309. The jurisdiction of probate courts over the appointment, etc., of testamentary trustees was created in 1820, Laws 1820, *c.* 21. It was enlarged as to power over the management of the trust in 1838 (Laws 1838, *c.* 372) and was extended to trusts *inter vivos* in 1874. Laws 1874, *c.* 2.

These earlier acts were given extended consideration in *Hayes* v. *Hayes*, 48 N. H. 219 (1868). The conclusion there reached was that they did not confer upon probate courts a general equitable jurisdiction over trusts, but rather what may be called business or administrative powers. The jurisdiction conferred is there likened to the authority over the acts of an administrator, and similar limitations thereon are declared to exist; and it was held that as to such matters as the interpretation of doubtful provisions of a will creating a trust the probate court had no jurisdiction. It of course followed that the jurisdiction of the superior courts on these subjects was not taken away or impaired.

In that case no bond had been filed by the trustee. The case might have been disposed of upon the ground, discussed in the opinion, that such action was a necessary prerequisite to probate jurisdiction. But the court declined to do so, and expressly placed the decision upon the grounds outlined above.

The issue of conflicting jurisdiction appears to have first arisen in 1871. The case was a petition to apply the *cy pres* doctrine to a charitable testamentary trust. The trustees were also the beneficiaries, and it did not appear that there had been any appointment by the probate court, although the trustees had held and administered the trust estate for some time. Objection was made that the proceedings should be in the probate court. In overruling the objection the court, after stating the general equitable power to advise and direct trustees, said:

"If, then, jurisdiction has been conferred upon courts of probate to make orders and decrees in relation to the sale, management, investment, and disposition of trust property, and that shall be construed to embrace cases like the present, it cannot, in the absence of any provision to that effect, take away the jurisdiction of this court." *Petition of Baptist Church*, 51 N. H. 424, 425. The then recent decision in *Hayes* v. *Hayes* is not mentioned, although the holding therein that the statute did not confer probate jurisdiction in such a case would have disposed of the question involved, without any reference to concurrence of jurisdiction.

At an earlier date, jurisdiction was exercised over a trust fund, upon petition of an executor-trustee, and a decree was entered for the return to him by the guardian of a beneficiary of certain funds held to be a part of the principal trust. No question of probate jurisdiction appears to have been raised. *Wheeler* v. *Perry*, 18 N. H. 307 (1846).

*Methodist Episcopal Society* v. *Harriman*, 54 N. H. 444 (1874) is similar to *Petition of Baptist Church, supra*. No question of jurisdiction appears, but it is to be noted that the opinion directs that the trustee shall invest "in such securities as the judge at the trial term may order." *Ib.*, 447. The seeming recognition therein of the Massachusetts practice to also secure authority to alter the form of charitable trusts through legislative grant has not met with subsequent approval. *Dow* v. *Railroad*, 67 N. H. 1, 60.

*Hale* v. *Railroad*, 60 N. H. 333, (quoted by the plaintiff) deals with trustees of railroad bonds, whose powers and superintendence are subjects of special statutory regulation. The statement in that case of the general rule that equity has complete jurisdiction over trusts and trustees has no reference to the subject of statutory probate jurisdiction over certain matters pertaining to trusts.

In *Rolfe &c. Asylum* v. *Lefebre*, 69 N. H. 238 (1897) the power of a court of equity "over the investment and change of securities in the hands of trustees" was recognized and exercised. But this case did not relate to the ordinary situation of a mere request to change investments, but of one to transmute a charitable trust. See also *Kendall* v. *Kendall*, 60 N. H. 527.

Equity jurisdiction was sustained in *French* v. *Westgate*, 70 N. H. 229 (1899), because the bill was brought to compel the execution of a power "and the legislature has not given probate courts jurisdiction in such matters. P. S., c. 198." *Ib.*, 230. It was further held that equity having obtained "jurisdiction of this matter, can afford complete relief, including the assessment of the plaintiff's damages, if any, growing out of the trustee's neglect and the settlement of the trustee's account." Proceedings in conformity to this decision were subsequently had in the superior court. *French* v. *Westgate*, 71 N. H. 510. The question whether "equity would take jurisdiction of the accounting if that alone were the object of the suit, or whether it would leave that matter to the statutory jurisdiction of the probate court," was left undecided. 70 N. H. 230.

If these were all the decisions upon the subject, they would sustain a conclusion that equity jurisdiction to compel the execution of a trust, to advise trustees as to their duties or to interpret instruments

creating trusts, may draw after it a full accounting for the trust. But, as will appear hereafter, later cases express a different view. And it is to be noted that in each of the cases hereinbefore considered there was a distinct ground for seeking equitable relief, independent of an accounting for the trust, and that in none of them except *French* v. *Westgate, supra,* was any accounting had or ordered.

Power to remove trustees and power to appoint their successors has also been considered in several cases. That a court of equity has power to remove, notwithstanding the statutory jurisdiction of the probate court, was declared in *Barker* v. *Barker,* 73 N. H. 353. In that case the unsuitableness arose from the fact that the depletion of a testamentary trust managed by a board of seven trustees had created a situation where payment for their services would take a large share of the income, and the issue was whether under these circumstances equity had the power to discharge the board and direct that the trust be managed by a single trustee. In sustaining such an order, it was said that the findings were understood to include one "that the present trustees are unsuitable to continue in the management of the trust." *Ib.,* 355. But the finding of unsuitableness thus said to be implicit in the facts reported was merely that it was unsuitable to have the large board. It offered no criticism of the personal qualifications of the individuals composing the board. The great question in the case was whether, because of the change of circumstances incident to the depletion of the fund, equity had power to direct that instead of the seven trustees provided for by the testator, the trust be managed by a sole trustee.

The issue of jurisdiction to appoint a successor was not considered, but in another case decided the same day, it was declared in unequivocal terms that it is the duty of the probate court to appoint all trustees of testamentary trusts, whether named in the will or not. *Carr* v. *Corning,* 73 N. H. 362. The question of concurrent jurisdiction in the superior court is not there touched upon.

An examination of the statutory provisions for the administration of express trusts shows that an appointment by the probate court is required in every case. "Every trustee . . . shall give bond to the judge of probate." P. L., c. 309, s. 1. Failure to give bond is to be deemed a declination of the trust. *Ib., s.* 7. "These provisions . . . prescribe certain things which must be done before . . . [the] executor is authorized to pay over the funds in his hands. The trustee must have qualified as the statute requires." *Fernald* v. *First Church,* 77 N. H. 108, 110. In making the appointment it is the duty of the

judge of probate to pass upon the fitness of the proposed trustees, as well when they are nominated in the will as when they are not. *Carr* v. *Corning, supra.*

But it may be said that a court of equity having the matter in hand, and having ordered the removal of the old trustees, may pass upon the fitness of a proposed new one and make the choice, as an incident to the general relief it has jurisdiction to grant,—that in such event it would be the duty of the probate court, when applied to thereafter, to treat the matter of removal and selection as *res adjudicata* and make a formal appointment in conformity to the order of the superior court.

One answer to this is that because of the statutory provisions before referred to the appointee of the superior court would be forbidden to intermeddle with the trust estate. Appointment and giving bond in the probate court are statutory prerequisites to power to act. *Bank &c.* v. *Tilton,* 82 N. H. 81. In other words, the so-called appointment by the superior court would not be an appointment at all, but merely a binding direction as to whom the probate court should appoint. The exclusive jurisdiction of the probate court to appoint cannot be invaded in this way. *Barrett* v. *Cady,* 78 N. H. 60; *Scammon* v. *Pearson,* 79 N. H. 213. Other late cases recognize the soundness of this conclusion. In *Straw's Petition,* 78 N. H. 506, this court refused to fill vacancies in a board of testamentary trustees, although the will provided for such procedure. The grounds for the refusal stated in the opinion were that the probate court has jurisdiction of the subject and that "the power to appoint trustees of estates is not vested in the supreme court." *Ib.,* 507.

In *Roberts* v. *Corson,* 79 N. H. 215, an executor asked for direction as to the payment of a legacy for charity, given to a lodge of Masons. The conclusion was that the executor should pay over to the lodge "unless the court finds that administering the trust is inconsistent with the purpose for which the lodge was established. If that is found, the executor will turn the property over to whomever the probate court appoints to administer the trust." *Ib.,* 216. *Straw's Petition, supra,* is cited with approval.

More definitely still, it was decided in *Scammon* v. *Pearson,* 79 N. H. 213 that, upon a bill to determine whether a certain distribution by an executor had been of principal or income, the executor could not be treated as having the rights of a testamentary trustee, although he had acted as such, because "a trustee cannot take an estate under a will until he has given the bond required by the statute. P. S., *c.* 198, *s.* 1." *Ib.,* 214.

If the argument advanced in the Massachusetts case cited and relied upon in *Barker* v. *Barker*, 73 N. H. 353 (*Bowditch* v. *Banuelos*, 1 Gray 220) were sound, it would follow that all trust estates might be wholly administered in the superior court, to the complete exclusion of the probate court. If it were true that complete equity jurisdiction over trusts was left unimpaired by the probate acts of 1820, 1838 and 1874, it must follow that the probate proceedings are merely permissive and never necessary. This is the result which appears to have been arrived at in Massachusetts where, as a result of the holding that there is concurrent jurisdiction, it has also been held that if the trustee is appointed by the probate court he must give bond, but if by the superior courts he may be permitted to serve without bond (*Bradstreet* v. *Butterfield*, 129 Mass. 339), and that a full accounting for the trust may be ordered in the superior courts (*Hayes* v. *Hall*, 188 Mass. 510), while it is also said that "a testamentary trustee" is "compelled by statute to render its accounts, at least once a year, to the Probate Court" (*New England Trust Company* v. *Eaton*, 140 Mass. 532, 533).

In none of the Massachusetts cases supporting the theory of concurrent jurisdiction is any consideration given to the explicit provision, common to their statute and ours, that every trustee shall give bond to the judge of probate. The conclusions there reached are plainly contradictory to the provisions of the original act. The language used there was that every trustee shall give bond to the judge of probate to return an inventory, to render accounts to him, and to faithfully execute the trust. Laws 1820, *c.* 21, *s.* 1. All these provisions have been retained. P. L., *c.* 309, *s.* 1.

The plain common sense of the matter is that these statutes were intended to confer upon the probate court a jurisdiction over trusts comparable to that over estates of deceased persons and wards, and that to this extent the jurisdiction of the superior courts was taken away, except as it might be exercised upon appeals from probate decrees. Procedure in late cases has been in harmony with this conclusion. *Weston* v. *Society*, 77 N. H. 576; *Same* v. *Same*, 79 N. H. 245; *Calley* v. *Institution*, 83 N. H. 104, 107; *Dennison* v. *Lilley*, 83 N. H. 422, 426.

This view is reinforced by the application of the universally recognized rule that where there is a plain, adequate and complete remedy at law equity has no jurisdiction. It is also supported by an eminent textwriter upon the subject. "The jurisdiction exercised by Probate courts in the matter of admitting wills to probate, appointing ad-

ministrators, and taking administration bonds, is exclusive of all other courts or tribunals in all the States. Other matters committed to their jurisdiction are, generally, within their exclusive original juris-diction, any party interested having, in most States, a right to appeal and have a trial *de novo* in the appellate court." 1 Woerner, Am. Law of Adm. 534. "In some States, courts of equity have retained concurrent jurisdiction with probate courts in some respects, chiefly in the matter of compelling executors or administrators to account. The general tendency, however, is to vest exclusive original jurisdic-tion over executors, administrators, guardians, curators, etc., in Pro-bate courts." *Ib.*, 535.

The general line separating probate jurisdiction from that of the superior court is not difficult of ascertainment. The distinction is that between things which are "incident to the business of conducting the administration" and "a settlement with the judge of probate" concerning administration already had. *Patten* v. *Patten*, 79 N. H. 388, 392, 393.

This common-law test does not however solve every problem, for the legislature has from time to time conferred additional powers upon the probate court; and such changes must be taken into account in any situation to which they are pertinent. The decision in *Hayes* v. *Hayes*, 48 N. H. 219 is rested upon the construction given to the statute (now P. L., c. 309, s. 13) conferring probate jurisdiction over the "disposition" of trust funds; and the conclusion in *Stark* v. *Winslow*, 77 N. H. 599, that "The probate court has no jurisdiction of the distribution of personal property passing by will. P. S., c. 196, s. 6," was announced without any reference to other statutory pro-visions. The issue involved in the latter case had been avoided in *Stratton* v. *Stratton*, 68 N. H. 582, by an agreement that if the probate court had no jurisdiction to make the decree of distribution under a will, the appeal therefrom should be treated as a bill for instructions. There are other isolated provisions in the statutes, each of which, especially when taken in connection with the others, indicates more or less clearly a legislative purpose to confer such jurisdiction, or an understanding that it already existed. The obligation to pay and deliver the rest of the estate to whomever "the judge [of probate], by his decree, according to law, shall limit and appoint" (P. L., c. 299, s. 13, *par.* V) is common to the bonds of both administrators and executors. R. S., c. 158, s. 12. Power is also given to direct the payment of unclaimed shares on a final settlement by an adminis-trator, executor or trustee (P. L., c. 307, s. 9; Laws 1929, c. 20); con-

tribution by legatees may be adjusted and "such liabilities may be taken into consideration and allowed in the decree of distribution of the personal estate, . . ." (*Ib.*, *ss.* 16, 17); the shares of devisees may be assigned "according to their respective interests." (P. L., *c.* 308, *s.* 1); executors may be licensed to sell real estate when such appears to have been the testator's intention (P. L., *c.* 305, *s.* 17; *Brewster* v. *Mack*, 69 N. H. 52), and upon termination of a trust the judge may "by license and decree" authorize the transfer of the property "to such person as shall be entitled thereto" (P. L., *c.* 309, *s.* 14).

None of these, nor other somewhat similarly significant provisions, appear to have been considered in the cases cited. Whether those decisions could be treated as construing statutes not therein referred to, so that a subsequent reënactment would foreclose a reconsideration of the interpretation, whether even the doctrine of *stare decisis* would apply to the situation, or whether the question of the meaning and import of the statutes cited above should be treated as one of first impression, need not be decided in the present case. The issues here would not be affected by a conclusion one way or the other.

If the probate court has jurisdiction to construe a will or deed of trust, as an incident of its authority to pass upon accounts, or make a decree of distribution, it is not to be doubted that the superior court still has the frequently exercised power to advise a fiduciary as to the law governing his future conduct of the trust.

The probate court has no jurisdiction to settle a dispute between the fiduciary and one who may stand in the position of debtor or creditor to the estate. *Hayes* v. *Hayes*, 48 N. H. 219. If the fiduciary would be protected, in advance of action reviewing his conduct upon such matters in the probate court, he must (in the absence of authority to compromise under P. L., *c.* 302, *s.* 27) sue or stand suit, as the case may be. *Scammon* v. *Pearson*, 79 N. H. 213. If he does not do so, but assumes to act on his own judgment, he runs the risk of being charged in the probate court for the debt he should have recovered, or being disallowed the claim he paid but should have resisted. The probate decree fixes his status as to the estate he is accountable for, but does not affect that of the debtor or creditor. *Ham* v. *Ayres*, 22 N. H. 412; *Cross* v. *Brown*, 51 N. H. 486.

As to the past and completed transactions of the fiduciary, the question of legality is to be passed upon in the first instance by the probate court. "So far as it involves charging or discharging the . . . [fiduciaries] on account of . . . official acts, it is to be passed upon by the probate court when they settle an account. In that matter

this court has no jurisdiction to direct in advance the action of that tribunal." *Scammon* v. *Pearson*, 79 N. H. 213, 214. The same doctrine had theretofore been announced and applied in *Barrett* v. *Cady*, 78 N. H. 60.

As before stated, there is undoubted jurisdiction in equity to advise the fiduciary as to all doubtful questions touching his duty to act. So also there is jurisdiction upon the application of a co-fiduciary to compel a proper administration of the trust. *Crane* v. *Hearn*, 26 N. J. Eq. 378. The statutory right of a co-executor in this respect (*Patten* v. *Patten*, 79 N. H. 388) is similar to the equitable right of a co-trustee.

But in none of these cases is there authority for a court of equity to order an accounting such as the statute requires in the probate court. The decisions on this subject as to executors and administrators rest upon both constitutional and statutory provisions. The fact that as to trustees the inhibition implicit in the written law is statutory only makes no difference here. The power of the legislature to change one and not the other does not impair the efficiency of the former so long as no change is made.

These conclusions do not impair the authority of equity to see that trusts are administered according to their true intent or to protect beneficiaries from incompetent or dishonest trustees. If urgent need be shown for action to protect the trust from loss, a court of equity may appoint a receiver with authority to take and hold the property until the issue as to new trustees is settled as the law provides. Such a receiver is the proper officer of the court of equity, and accountable to it. *Eastman* v. *Bank*, 58 N. H. 421.

It may be said that, even with such procedure, the issue of removal and new appointment can be brought into the superior court upon appeal. This is true, but if it is so presented it is to the appellate court of probate and not to the chancellor. The point is that the superior court "has no power to advise or direct in advance the action of the probate court, or to interfere with due administration therein." *Barrett* v. *Cady*, 78 N. H. 60, 64.

In so far as the earlier cases hold that equity has concurrent jurisdiction with the probate court in the settlement of the accounts of trustees, or in the appointment or removal of trustees, they have in effect been overruled and are not to be followed.

So much of the present orders as amount to a tentative decree for the removal of the present trustees and the appointment of a new one is to be disregarded. The order for an accounting involves the power

of the court of equity to intervene at the request of a co-trustee for the protection of the trust from erroneous administration. The bill is brought by a trustee, who has the right to ask for the correction of errors whereby parts of funds have been improperly disbursed. The recipients of such disbursements are also parties here, and equity can settle the respective rights and liabilities of the contestants in this single proceeding.

This part of the controversy also involves the construction of the trust and a definition of the rights of the respective beneficiaries. The position taken earlier in the proceedings that there was a proper distribution of stock rights, etc., to those given the income only seems to be now abandoned. The rule on that subject is well settled in this state. The test is whether the property in question was in fact income accruing during the life of the trust, or a distribution of capital. The former belongs to the life beneficiary, the latter to the corpus of the estate which goes ultimately to the remainderman. In the absence of other evidence as to the underlying facts, stock dividends, or rights, are assumed to be principal, while cash dividends are treated as income. *Holbrook* v. *Holbrook*, 74 N. H. 201. The order that there should be an investigation of these items, and of the payments directly to Robert and Jessie, and that those improperly disbursed be returned to the trust, is sustained.

It is urged that the plaintiff has consented to some or all of the transactions of which she now complains and that therefore she is estopped to deny the validity of the action taken. But she does not appear here solely in her individual right. She also seeks relief in her capacity as a fiduciary. Even though she may have participated in illegal dealings with the trust, it has always been her duty to act legally and to make reparation for illegal action taken. Her position is that she now desires corrective action by the board of which she is a member. Her consent did not estop the beneficiaries, whom she now seeks to properly represent.

II. The plaintiff also claims that the will requires that the trustees act unanimously, and that therefore action by the majority against the will, or without the consent, of the minority is invalid. The superior court adopted this view, and enjoined any dealing with the trust except in conformity therewith.

"When more than one trustee is required to execute a trust, a majority of the trustees shall be competent to act in all cases, unless the instrument or authority creating the trust shall otherwise provide." Laws 1901, *c.* 2, *s.* 1; P. L., *c.* 309, *s.* 3. "The will—the in-

strument creating the trust—neither provides in terms nor by necessary implication that the trustees shall act as a unit. Consequently a majority may act in all cases. Laws 1901, c. 2." *Ladd* v. *Ladd*, 75 N. H. 371, 373.

Judged by this test, there is nothing in the will here involved to take the case out of the statutory rule. The implication relied upon by the presiding justice is at best a doubtful one. It is sought to be drawn from the facts that the testator gave the trustees extraordinary powers, that certain of the powers were to be exercised personally and that one of the trustees was of the half blood of the other two. It is manifest that the testator expected the broad powers given would be exercised. He evidently desired action in the matter of investment and reinvestment. Everyone knows how difficult it often is to obtain this when unanimous consent of a numerous board is required. It is as fair an argument to say that because of the nature of these powers the testator intended that the majority should govern, as to contend that because of great responsibility he required unanimous action.

It is true that some of the functions of the trustees are personal, and cannot be exercised by a third party; but this tells nothing of how they were to be exercised, whether by majority rule or otherwise.

The idea that he contemplated contention between the children of his two wives, rests in conjecture alone. The inference seems very strong that if he had had in mind the thoughts now imputed to him, he would have expressed the same, and directed that unanimous action was necessary. No doubt the testator intended that all the trustees should act. They are all to participate in the consideration of proposed conduct of the trust. But this by no means implies that unanimity of judgment is required. The full board is to act upon the matters in hand, but *non constat* that their action must be unanimous.

The statute was designed to afford relief from situations like that presented here, and its provisions govern in this case. But while the decision of the majority controls, it does not follow that they may carry on the trust independently of the minority trustee. In all matters preceding action, she is entitled to take part in their deliberations and to give to the board the benefit of her views. Her present residence at a distance may make this difficult to accomplish, but a proper administration of the trust requires that she be given reasonable opportunity to express her views and hear theirs. This does not mean that the other trustees must journey to Connecticut in order to

give her an opportunity to participate in their deliberations. The trust is a local affair, locally administered. If there might be some extraordinary circumstances requiring the unusual course of their going to her, it must be true that as a general rule she must come here, or else depend upon communication with them from a distance. As before stated, the rule of reasonable conduct and reasonable opportunity to participate in the deliberations is to govern in all cases.

III. Complaint is also made concerning certain administrative details. The will provides that the trustees may hold the stocks in their individual names. It has been the practice in some instances to take certificates in the name of one trustee, who held the certificates. The papers and documents belonging to the trust should be kept together in a safe place, controlled by the trustees as such, and not in the custody of an individual member of the board. In view of the peculiar nature of the trust powers, there appears to be no valid objection to the form of certificates employed. It is much the same as the common practice of dealing in "street certificates" which are passed from one holder to another, without a recorded transfer.

As hereinbefore indicated the injunctions issued should be dissolved. Whether there is occasion for the issuance of one limited in accordance with the views herein expressed, or whether a receiver should be appointed to take over the trust, pending proceedings in the probate court, are matters for the consideration of the superior court. But if "there is nothing indicating any intended breach of the trust or danger to the trust fund, no case is made for granting an injunction, or for the immediate appointment of a receiver." *Gale* v. *Sulloway*, 62 N. H. 57, 59.

*Case discharged.*

All concurred.