797 A.2d 226 (2002)
351 N.J. Super. 177
MERRILL LYNCH PIERCE FENNER & SMITH INCORPORATED, and Nicholas Denucci, Plaintiffs-Appellants,
v.
Jacqueline NORA-JOHNSON, TTE u/a DTD 6/27/94, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 2002.
Decided May 23, 2002.
*227 David J. Libowsky, Florham Park, argued the cause for appellants (Bressler, Amery & Ross, attorneys; Mr. Libowsky and Dominic F. Evangelista, on the brief).
John J. Reddy, Jr., argued the cause for respondent (Reddy & Reddy, attorneys; Mr. Reddy, on the brief).
Before Judges CONLEY, LEFELT and LISA.[1]
The opinion of the court was delivered by LEFELT, J.A.D.
Defendant Jacqueline Nora-Johnson is co-trustee, with her brother Frank Nora, of the Elizabeth Nora Trust. Jacqueline contends that with Frank's consent, but without her knowledge or approval, various unsuitable trades were executed by plaintiffs Merrill Lynch, Pierce, Fenner & Smith and Nicholas Denucci, a registered representative of Merrill Lynch. To challenge these trades, which caused losses to be incurred by the trust, Jacqueline, without Frank's consent, began an arbitration that plaintiffs sought to enjoin by verified complaint and order to show cause. Plaintiffs now appeal from Judge David Cramp's May 15, 2001 order, which denied the injunction and dismissed the complaint. We affirm.

I.
The trust benefits Elizabeth Nora, the 91 year-old mother of the co-trustees. Elizabeth Nora lives alone and "relies on the Trust to pay her property taxes, homeowner's insurance and other home-related expenses." According to Jacqueline, the investment objective of the trust was to preserve the capital with investments that would provide income and retain $10,000 to $20,000 in liquid cash for expenses.
In April 1999, the trust account was transferred to the Morristown office of Merrill Lynch where plaintiff Nicholas Denucci became its financial consultant. At that time, the account held $100,539 in certificate of deposits and $131,537 in money market accounts.
When the account was transferred, Jacqueline and Frank signed a Trustee Certification Form advising Merrill Lynch that under the trust the company could accept orders and other instructions only from "[a]ll [the] trustees [who] must act jointly."
According to Jacqueline, after the transfer to Merrill Lynch, various trades were completed by Denucci with Frank's consent, but without her consent or knowledge. These trades were made to purchase, for example, shares of AT & T, J.P. Morgan, Federated Government Income Securities, John Hancock Strategic Income Fund, State Street Research High Income Fund, Nokia and Wal-Mart. Jacqueline contends that as a result of these trades, the trust lost thousands of dollars.
*228 When Jacqueline discovered in mid 2000 that these trades had been made and that trust losses were sustained, she commenced her arbitration action against Merrill Lynch and Denucci. Jacqueline charged Denucci with making unsuitable trades that compromised the interests of the trust beneficiary. Jacqueline also alleged that Merrill Lynch failed to supervise Denucci's trading activities and that both Merrill Lynch and Denucci engaged in trades without her consent, contrary to the Trust Certification Form which required consent from both co-trustees.
Jacqueline did not name her co-trustee Frank as a defendant in the arbitration nor did Frank join as co-plaintiff when Merrill Lynch sought to enjoin the arbitration. Instead, Frank provided an affidavit stating that Jacqueline did not consult him or obtain his permission "to initiate the instant arbitration." Moreover, he added that he did not "believe that there is any legal merit to any of the alleged claims raised in the Statement of Claim in this case" and he was "totally opposed to permitting this action to proceed."
While Jacqueline in her arbitration contended the trades were illegal because she never consented, Merrill Lynch argued that the arbitration should be enjoined because Frank as co-trustee never consented to that action. Judge Cramp in dismissing Merrill Lynch's complaint seeking to enjoin the arbitration explained that he did not "think that the [trust] agreement intends to prohibit one of the trustees to take an action to protect[ ] the assets of the trust." The judge emphasized that in his opinion there was "almost an obligation on the part of the trustee who is not consulted about the trading to bring some kind of action to restore the losses to the trust." We agree with Judge Cramp.

II.
Plaintiffs argue that Jacqueline could not commence the arbitration without her co-trustee Frank's consent. The general law as recited in the Restatement of Trusts does provide that when "there are two or more trustees, the powers conferred upon them can properly be exercised only by all the trustees, unless it is otherwise provided by the terms of the trust." Restatement (Second) of Trusts § 194 (1959); see also Hersh v. Rosensohn, 127 N.J.Eq. 21, 22, 11 A.2d 75 (E. & A.1939); Semler v. CoreStates Bank, 301 N.J.Super. 164, 175, 693 A.2d 1198 (App. Div.1997); Donaldson v. Madison Borough, 88 N.J.Super. 574, 585, 213 A.2d 33 (Ch.Div.1965).
While unanimity is thus generally required, the law also provides for situations where single trustees might properly act alone. For example, "if it appears to be for the best interest of the trust that there should be an exercise of the power, the court may on the application of a co-trustee or beneficiary direct its exercise." Restatement (Second) of Trusts § 194 at comment a. In addition, comment d to the Restatement (Third) of Trusts § 39 (Tentative Draft No. 2 1999), states "[o]bviously, a co-trustee can sue another trustee for breach of trust without the latter's consent." Moreover, one trustee may "maintain a suit against another to compel him to perform his duties under the trust." Restatement (Second) of Trusts § 200, comment e.
While the Nora trust language does not specifically permit action by only one trustee, neither does the trust language prohibit unilateral trustee action. The trust agreement notes that "all of the right, title and interest in and to the property described in the annexed SCHEDULE A shall be transferred to the Trustees." The trust agreement also provides *229 that the "Trustees shall hold all property transferred to them in trust ... [and] shall manage, administer, invest and reinvest the principal...." In discussing the duties of the trustees, the trust also provides that the "Trustees ... may pay or apply to or for the benefit of the Grantor ... such sum or sums ... as the Trustees, in their sole and nonreviewable discretion, shall deem to be in the best interest of the Grantor."
The trust also provides that in administering the trust, "the Trustees ... shall have the following powers, which ... may be exercisable by them at such times ... in such manner, and in accordance with such criteria, as they, in their sole and nonreviewable discretion, shall deem appropriate." Among the powers exercisable by the "Trustees" is the power "to adjust, compromise or arbitrate claims or demands."
We do not read these provisions or any others cited by Merrill Lynch or contained in the trust agreement as requiring both trustees to act together before commencing an arbitration to protect the trust funds. In fact, an "individual Trustee acting from time to time has the power, with the consent of the Grantor during his lifetime, or without the consent of the Grantor after his death or incapacity ... to remove and discharge any corporate banking institution." This clause is significant because it requires consent of the grantor when the grantor is alive, but not the other trustee.
Most significantly, the agreement also provides that the word "Trustees ... shall be construed to include the Trustee, Trustees, any co-Trustee or co-Trustees herein or hereafter designated ... and all reference to such Trustees shall be construed in the singular or plural, and in such gender as the sense and circumstances require." In Dunker v. Reichman, 841 F.2d 177 (7th Cir.1988), the court relied on similar language to hold that the agreement "granting the trustees the power to contractually bind the trust meant that either trustee acting alone could legally bind the trust." Id. at 180.
Thus, while there is no specific authorization in the trust agreement for a single trustee commencing an arbitration on behalf of the trust, there is ample support for the proposition that such action, when in the interests of the trust, is not precluded. Moreover, there is no support in the trust language for Merrill Lynch's position that Jacqueline could not protect the trust from dissipation, without the consent of her co-trustee.
Furthermore, there is support from the nineteenth century for Jacqueline's arbitration. In Crane v. Hearn, 26 N.J.Eq. 378 (Ch.1875), Crane and Hearn were co-trustees of a trust executed by Jouet with property owned by Mrs. Jouet for the purpose of providing income to herself. The purpose of the trust was "to secure the trust estate against Mr. Jouet and the claims of his creditors." The trustees executed a mortgage on the farm occupied by the Jouets, the farm being trust property, to pay taxes and other assessments. The bank issued a check payable to the trustees of Mrs. Jouet. Because the check arrived when Mrs. Jouet was not home, Hearn endorsed the check as trustee and handed it to Mr. Jouet who ultimately spent a large portion of it "paying his personal debts, and for other private purposes of his own." Id. at 381. Crane had no knowledge of this transaction and neither authorized it nor even anticipated it.
As soon as Crane discovered this transaction, he filed suit to restrain the trustee and Mr. Jouet from spending the money. The court held that it was "his duty to do so." Crane was obligated "to protect the trust estate from any misfeasance by his co-trustee ... and if the wrongful act has *230 already been committed, to take measures, by suit or otherwise, to compel the restitution of the property, and its application in the manner required by the trust." Ibid. So too here, where Jacqueline contends that high-pressure sales tactics by Denucci persuaded Frank to agree to "highly speculative and unsuitable" investments "contrary to the stated investment objectives" of the trust.
We conclude that Jacqueline, as trustee, has a personal obligation to compel proper administration of the trust. She must ensure that the trust is administered in accordance with the true intent of the trust agreement. Rockwell v. Dow, 85 N.H. 58, 154 A. 229, 234 (1931). Whenever a co-trustee determines that actions of the other trustee are dangerous to the interest of the trust beneficiary, the co-trustee must act to protect the beneficiary. Bogert, Law of Trusts § 588 at p. 388, 154 A. 229 (2d Ed.1980). "[O]ne trustee may invoke the aid of courts for protection of the trust estate, although his co-trustee refuse to join with him." In re Luscombe's Will, 109 Wis. 186, 85 N.W. 341, 344 (1901). Indeed, if the co-trustee does not act, the co-trustee herself or himself may become liable for the failure to safeguard the trust property. 6 New Jersey Practice, Wills and Administration § 1098, at 342 (Alfred C. Clapp & Dorothy G. Black) (rev.3d ed.1984).
We have not been provided with the Customer Agreement between Merrill Lynch and the trustees. A Merrill Lynch arbitration agreement is, however, quoted in another case. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, 885 F.2d 1149, 1153 (3d Cir.1989). This clause provides that "any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted [by] ... the New York Stock Exchange ... or the National Association of Securities Dealers." Assuming the clause binding the parties in this case is similar, as the parties suggested during oral argument, Jacqueline appears to be in the right forum to press her dispute with Merrill Lynch. In addition such a provision requiring arbitration is valid and enforceable. N.J.S.A. 2A:24-1.
Jacqueline and Frank both declared in the Trustee Certification Form submitted to Merrill Lynch that joint action by the trustees was required with respect to trust-related business. Accordingly, Jacqueline has a colorable claim to arbitrate before the New York Stock Exchange regarding the asserted trades that she claims were both unsuited for the trust's investment objectives and contrary to the instructions the trustees provided Merrill Lynch in the Certification Form.
Affirmed.
NOTES
[1] Judge Lisa did not participate in oral argument, but has, with the consent of counsel, joined in this opinion. R. 2:13-2(b).