THE BANK OF NEW JERSEY, TRUSTEE FOR THE GARDEN STATE RACING ASSOCIATION LIQUIDATION TRUST, PLAINTIFF-APPELLANT, v. PATRICIA ABBOTT, ET AL., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 9, 1985—Decided January 23, 1986.

Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.

*Goodman, Schneider & Cohen,* attorneys for appellant Bank of New Jersey (*Harold G. Cohen,* of counsel; *Peter D. Collier,* on the brief).

*McCarter & English,* attorneys for respondent *Joan M. McCrane* (*Alfred L. Ferguson,* on the letter brief).

*Stryker, Tams & Dill,* attorneys for Fidelity Union Bank, N.A., New Jersey, as Successor Trustee, C.T.A. Under the Will of *Eugene Mori,* Deceased (*George A. Aguilar,* on the letter brief).

*Reuss & Cavagnaro,* attorneys for Charles Cunningham, Lorraine Cunningham and Mrs. Carl (Adele) Johnson (*Cavagnaro,* on the letter brief).

*George H. Hohweiler,* attorney for the Cresci Family and English Family.

*Thomas J. Hartman,* Chartered, attorney for Eugene E. Mori (*Kevin L. Flanagan,* on the letter brief).

The opinion of the court was delivered by

LONG, J.A.D.

The sole question presented on this appeal is the sufficiency of an award of fees to The Bank of New Jersey in connection with its role as trustee for the Garden State Racing Association (GSRA) Liquidation Trust. Because we have concluded that the trial judge, Judge Lowengrub, applied appropriate legal and equitable principles in determining the amount of the award, we affirm.

Eugene Mori, Sr., founder of GSRA, died on October 8, 1975. The Bank of New Jersey (the Trustee) was appointed administrator *pendente lite* of Mori's estate pending resolution as to which of Mori's two wills would be admitted to probate. In this capacity the Trustee held 11.6% of the outstanding common stock of GSRA and approximately 92% of the Cumberland Companies, two holding companies with the majority of outstanding GSRA stock. Prior to Mori's death, GSRA was a New Jersey corporation primarily in the business of racing thoroughbred horses; it also owned Garden State Park, the Cherry Hill Inn, the Cherry Hill Lodge and extensive undeveloped tracts of land in New Jersey and Florida.

As a result of a fire at the racetrack on April 14, 1977 the Trustee convened a meeting of the directors and majority shareholders of GSRA in order to adopt a plan liquidation under *I.R.C.* § 337. The Probate Court confirmed the power of the Trustee as Administrator of Mori's Estate to vote the estate shares of GSRA and the Cumberland Companies in favor of adoption of a liquidation plan and of a Liquidation Trust Agreement. That is the Agreement which undergirds the Trustee's application for fees in this case.

During its stewardship, the Trustee was involved in every aspect of GSRA life including overseeing the day to day operations of the racetrack; extensive efforts to sell the track; monitoring improvements to the Cherry Hill Inn and the Lodge; negotiating labor issues with Inn and Lodge personnel; and processing large insurance claims. Eventually the track was sold for $15½ million; the Inn for $4,675,000, and the Lodge for more than $12 million. In addition, the Trustee successfully prosecuted and defended a series of litigations including several to forestall foreclosure of the racetrack property; one to set aside the sale of the track as fraudulent; a tax assessment proceeding; a suit against Eugene Mori, Jr. for damages and to rescind a Florida land sale to GSRA; a suit to dismiss a bankruptcy petition by Eugene Mori, Jr. in connection with the Florida land sale, and a class action by Mori and Richard

Burket, aggregate owners of less than 2% of the trust, alleging mismanagement by the Trustee and seeking damages, an accounting, removal of the Trustee and invalidation of a portion of the Trust Agreement.

There is absolutely no claim in this case of lack of diligence or wasting of assets by the Trustee. Indeed, it is clear from the facts that the Trustee's actions resulted in large tax savings to the beneficiaries throughout the life of the trust and substantial increases in the value of the corpus.

On August 29, 1983, the Trustee filed a complaint in the Superior Court, Chancery Division, for approval of its First and Final Accounting and to fix compensation for services rendered during the five year life of the trust. Judge Lowengrub entered an order to show cause, directed to the beneficiaries of the trust, affording them an opportunity to file objections and exceptions. Objections aimed primarily at the amount of compensation sought ($1,896,354) were filed by the Major Beneficiaries who hold 63.55% of the trust. They are the Cresci Family, the English Family, the Cunningham Family, Joan McCrane, and Fidelity Union Bank as successor trustee, C.T.A. under the will of Eugene Mori, Sr. Exceptions were also filed by Edward H. Ellis and Eugene Mori, Jr. (Mori's objections were eventually dismissed for procedural deficiencies.)

Section 26 of the Liquidation Trust Agreement provides:

Due to the uncertainties recited herein, it is not possible to provide in this Agreement the amount of compensation that Trustee ... shall receive from the Trust Estate for the services it or he may render in that capacity. For that reason, the only provision it is feasible or practicable to make regarding the amount of such compensation is, and it hereby is provided, that for the services it or he may render in that capacity, Trustee ... shall be paid and shall receive from the Trust Estate reasonable compensation in keeping with the usual compensation charged in the Philadelphia, Pennsylvania—Camden, New Jersey vicinity, for services of like character, payable quarter-annually, semi-annually or annually, as Trustee, in the exercise of its discretion and judgment may determine to be in the mutual best interests of the Trustee ...

Following negotiations between the parties, the beneficiaries and Ellis entered into Stipulations with the Trustee in which they agreed as follows:

> The Trustee hereby waives and agrees to not take any compensation for its services as Trustee of the Trust exceeding in the aggregate $1,348,962.00; provided, however, that in the event and only in the event that the Court awards gross corpus and income commissions to the Trustee in an aggregate amount less than $1,348,962.00 for such services, the Trustee may apply for commissions for such services rendered after March 31, 1983 and in connection with the settling of the First and Final Account of the Trust for an amount not to exceed the difference between the amount of such corpus and income commissions so awarded and $1,348,962.00. It is expressly understood and agreed that the total corpus and income commissions to be taken by or paid to the Trustee for its services as Trustee of the Trust under any circumstances, regardless of the amount of any award from any Court, shall not exceed, in the aggregate, the sum of $1,348,962.00.[1]

All objections were then withdrawn so that at the hearing to fix compensation there was no opposition to the Trustees application for fees of $1,348,962.

On July 19, 1984 Judge Lowengrub entered an order of judgment fixing income commissions to the Trustee at $153,-486.20 and corpus commissions at $761,541 for a total of $915,027.20. Thereafter, the Trustee filed notice of motion to amend or modify the judgment which was denied. This appeal ensued.

 The Trustee argues for the first time on appeal that Judge Lowengrub erred in considering the provisions of the Probate Reform Act (*N.J.S.A.* 3B:1-1 *et seq.*) to this case and that he should have determined the compensation issue on the basis of the Trust Agreement and subsequent Stipulations. Underpinning this argument is the Trustee's view that it is possible to read the Trust Agreement and the Stipulations together as establishing the Trustee's fee entitlement with specificity, thereby obviating the need to look to any other source for guidance. Even if the beneficiaries did not disagree with this thesis (which they do, rather strenuously) it is perfectly clear to us that neither § 26 of the Trust Agreement nor the Stipulations provide a precise formula for fixing the Trustee's

---

[1]This is the language of the Major Beneficiaries Stipulation. Ellis' Stipulation replicates this language nearly identically.

compensation. Indeed the most that can be said of the Stipulations, which were apparently negotiated to eliminate objections to a greater amount, is that they capped the Trustee's ability to seek a fee at $1,348,962. Significantly, the Stipulations recognize that the fee issue is to be adjudicated by a court which will not be bound by a particular figure or formula. In this respect, they state "... that in the event and only in the event that the Court awards gross corpus and income commissions to the Trustee in an aggregate amount less than $1,348,962.00 for such services, the Trustee *may* apply [for commissions on services rendered after the termination date of the Trust]."

Similar language was construed in *Gifford v. Commercial Trust Co. of N.J.*, 139 *N.J.Eq.* 19 (E. & A. 1946) where the trust instrument provided for a commission of 2% on corpus "disposed of or in any manner severed from the trust fund, subject, however, to any decree of the Prerogative Court of the State of New Jersey on any account filed by [the trustee]." *Id.* at 20. The Court of Errors and Appeals reversed an award of 2% of corpus on grounds that no part of corpus had been severed or otherwise disposed of. In so doing the court found that:

> The intention of the parties as gathered and ascertained from the whole language of the paragraph should be given effect and control. This leads to but one conclusion, that the trustee is entitled to no more than two percentum on *corpus* and then only when that is disposed of or in any manner severed from the trust fund, except if the Prerogative Court on an accounting determines, for any reason, that a lower rate should be allowed. The rate as fixed in the agreement was a ceiling beyond which the court could not go. The last part of the paragraph referring to the Prerogative Court is a limitation rather than a grant of rights in addition to those set forth in the first part thereof. [*Id.* at 21]

*Gifford* is virtually indistinguishable from this case. The language of the Trust Agreement and the subsequent Stipulations simply do not provide for a fixed rate of compensation. Rather, taken together, they merely establish a ceiling which the parties agree should not be exceeded.

Since the instruments do not precisely articulate a formula, the question presented is by what standard the Trustee's fee is to be measured. We think that in attempting to award reasonable compensation to the Trustee, Judge Lowengrub was cor-

rect in applying the provisions of the Probate Reform Act (*N.J. S.A.* 3B:1–1 et seq.) to this case.

The Probate Reform Act provides that in fixing the commission for a nontestamentary trustee, "the court shall allow him the compensation as may have been agreed upon by the instrument creating the trust; and in the absence of any express provision concerning compensation, shall allow him commissions in accordance with this chapter." *N.J.S.A.* 3B:18–2. The allowance of a corpus commission is set forth in *N.J.S.A.* 3B:18–14, which provides that where corpus receipts exceed $100,000 the trustee is entitled to 5% of the first $100,000 and, "on the excess over $100,000 of corpus, a percentage, not in excess of 5%, as the court may determine on the intermediate or final settlement of the fiduciary's accounts, according to actual services rendered."[2] *N.J.S.A.* 3B:18–1 states that: "Allowance of commissions on corpus in excess of $100,000 to fiduciaries ... shall be made with reference to their actual pains, trouble and risk in settling the estate rather than in respect to the quantum of the estate." The Trustee claims that these provisions cannot apply in this case because *N.J.S.A.* 3B:1–2, which defines the term "trust," excludes "... business trusts providing for certificates to be issued to beneficiaries, common trusts, security arrangements, liquidation trusts...." This language, which was added to the statute in 1982, derives from § 1–201 of

---

[2]This section was amended, effective December 14, 1983 to allow 5% of the first $200,000 of the corpus, 3½% on the excess over $200,000 up to $1,000,000 and 2% on any excess over $1,000,000, or such other percentage as the court may determine on final settlement of the accounts according to services rendered. The statute in effect at the time of the accounting is controlling. *Nat'l State Bank of Newark v. Nadeau,* 57 *N.J.Super.* 53, 69 (App.Div.1959). The GSRA trust terminated on March 31, 1983 and the complaint for the first and final accounting was filed on August 29, 1983. Presumably the amended statute is not applicable to this action. The issue is not raised by the parties on this appeal nor was it raised below. Nothing in Judge Lowengrub's opinion indicates that he would have awarded a different amount but for his reliance on the statutory maximum. *Id.* at 71–72. Under the statute as amended plaintiff would have been entitled to corpus commissions of $772,541.71, only $11,000.71 more than was awarded by Judge Lowengrub.

the Uniform Probate Code *(U.P.C.)*. As the Trustee correctly points out, neither the *U.P.C.* nor the legislative history of the New Jersey provision explain the exclusion of these trust forms from the statute. Indeed it is unclear what the Legislature had in mind when it added these exclusions to the statute, although it is true generally that business trusts are quite different from non-business trusts. *Restatement 2d of Trusts* § 1 Comment b. The exclusionary language in the *U.P.C.* probably reflects the fact that in many jurisdictions the trust arrangements contained in the exclusions are governed by other statutory provisions, such as corporations or securities laws. *See generally* 12A *C.J.S., Business Trusts* § 9 at 502. There are, however, no alternative provisions in the New Jersey statutes, thus eliminating other statutory references as a source of guidance on this fee. We note that the Trustee advances no alternative to the Trust Instrument and Stipulations themselves and, in the face of our holding that these documents do not provide a fee formula, offers no guidance as to how to address this issue. Indeed, the Trustee appears to argue that if the Trust Instrument and Stipulations are not dispositive, no law applies.

Notwithstanding the differences between business and liquidation trusts and ordinary testamentary trusts we are well satisfied that in attempting to reasonably compensate the Trustee, Judge Lowengrub soundly considered the principles of the Probate Reform Act. In this regard, it is clear that there are some general rules of application which govern all of these trust forms including the rules for compensation. *Bogert, Trust & Trustees,* (2d ed. revised 1983) §§ 247U at 208, 254 at 304; 3 *Scott on Trusts* (3d ed. 1967) § 242.1 at 2113. *Cf. Restatement 2d, supra,* § 242 Comment. Thus, as the Trustee properly argues, when the trust instrument provides for commissions payable to the trustee, it is binding on the court. *Gifford, supra,* 139 *N.J.Eq.* 19; *N.J.S.A.* 3B:18–2. But where a trust instrument of any nature fails to prescribe the trustee's compensation, as in this case, the general rule is that the court shall reasonably compensate the trustee for the efforts expend-

ed. 3 *Scott, supra,* § 242 at 2109; *see generally Bogert, supra,* §§ 975–976. We think that in carrying out this mandate, Judge Lowengrub properly looked for guidance to the compensation provisions of the Probate Reform Act which codified, in a non-business context, the common law reasonableness standard. In our view, proper application of the Probate Reform Act provisions should result in fair and adequate compensation of the Trustee. That is all that is required. *See In re Estate of Moore,* 50 *N.J.* 131, 138 (1967).[3]

██ The only remaining issue is the Trustee's suggestion that in applying the Probate Reform Act standards, Judge Lowengrub erred. The fixing of trustee's commissions is a matter left to the sound discretion of the trial court and absent flagrant abuse of discretion there is no warrant for the appellate court's intervention. This standard of review was addressed by the Supreme Court in *In re Estate of Moore:*

> It is frequently said that "[T]he fixing of *corpus* commissions * * * is a matter left to the court's discretion * * *," which will be set aside only where there has been an abuse. *The National State Bank of Newark v. Nadeau, supra,* (57 *N.J.Super.,* at p. 70). This is certainly true insofar as the determination of rate is concerned if it is evident that the court reached that determination on the proper legal approach and with due appreciation and consideration of all the legally significant factors. *Cf. State v. Daniels,* 38 *N.J.* 242, 249–250 (1962). If it did not, it is not a question of abuse of discretion, but rather one of more fundamental error. The trial court's obligation is to fully examine a request for commissions and fix compensation in a fair and adequate amount after application of the principles and guidelines we have set forth, although parties in interest do not object or even consent to the amount requested by the fiduciary. *Cf. In re Simon,* 93 *N.J.Super.* 579, 585–586 (App.Div.1967). And he should clearly spell out in the judgment or otherwise on the record, for the assistance of a reviewing court and of other trial court judges in any future proceedings in the same matter, how and why he arrived at the rate, the base and the amount of commissions allowed. [*Id.* at 149.]

The court in *Moore* went on to explicate the standard:

> "Pains, trouble and risk" are difficult to define precisely and to translate into an appropriate percentage rate. While the *quantum* of the estate is not to

---

[3]Although now arguing *contra,* the Trustee apparently reached this conclusion independently since the fee originally sought was precisely 5% of the corpus above $100,000, the exact maximum provided in *N.J.S.A.* 3B:18–14.

govern, size may affect the extent of the risk. The chief concern ought to be with the services rendered, their extent, difficulty and quality, and the fiduciary's conscientiousness and performance. [*Id.* at 145; citation omitted].

Here Judge Lowengrub concluded that the pains, trouble and risk of the Trustee in this case were average and accordingly awarded 2% on the corpus in excess of $100,000, a figure well within the statutory prescription. He found that:

A fair reading and review of the contents of the affidavit clearly compel the conclusion that the contributions of the trustee consisted in the main of his selecting the best personnel whose services it could engage for the task at hand; and to oversee the prompt resolution of problems for the benefit of the beneficiaries of the trust; and to advise those beneficiaries of the progress of the administration of the estate.

In contesting this award, the Trustee cites *In re Estate of Seabrook*, 127 *N.J.Super.* 135 (App.Div.1974), noting that the court there found that in administering an estate in which the pains, trouble and risk were average, a rate of half the statutory 5% maximum—or 2½% to 3½%—was appropriate. *Id.* at 140, 316 A.2d 698. The court in *Seabrook* agreed with the Chancery judge that the services rendered were largely caretaking and that although some oversight of the business operations was necessary, the executorial trouble was minimal. In addition, the corporate executor was largely immune from liability. Because of the "average" nature of the pains, trouble and risk involved, the court affirmed an award of 2½% corpus commission. Although Judge Lowengrub's award of 2% was not particularly generous we cannot say that it constitutes a manifest abuse of discretion which would warrant interference by this court. The fee was based on Judge Lowengrub's conclusions that the Trustee was largely immune from liability, and that much of the Trustee's work consisted of finding others to manage the trust property. These conclusions, which distinguish this case from *In re Bloomer*, 43 *N.J.Super.* 414 (App. Div.1957), find support in the record and must be affirmed.

Finally, we hold that the Trustee is not entitled to compensation for services rendered after the termination of the trust. The Stipulations, which it contends authorize additional compensation if the court awards less than $1,348,962 merely

state that the Trustee *may apply* for such commissions, not that it is absolutely entitled to them. As with corpus and income commissions in general, any amount of extra compensation rests in the discretion of the trial judge.

Affirmed.