**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0414-22

IN THE MATTER OF THE
DAVI H. KATO SPECIAL
NEEDS TRUST, Dated
December 11, 2018.

_____

Argued January 17, 2024 – Decided February 26, 2024

Before Judges Whipple, Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000297-21.

Ronald L. Davison argued the cause for appellant Tristan Cavadas-Cabelo (Starr, Gern, Davison & Rubin, PC, attorneys; Ronald L. Davison, on the briefs).

Shirley Berger Whitenack argued the cause for respondents Maria Kato and Fabio Kato (Schenck, Price, Smith & King, LLP, attorneys; Shirley Berger Whitenack, of counsel and on the brief; Meredith Leigh Grocott, on the brief).

Arla Dawn Cahill argued the cause for respondent OceanFirst Bank (Mandelbaum Barrett PC, attorneys; Richard I. Miller, of counsel and on the brief; Arla Dawn Cahill, on the brief).

PER CURIAM

Tristan Cavadas-Cabelo appeals from a September 26, 2022 order terminating a special needs trust, creating an irrevocable trust, setting his termination commission, and awarding counsel fees. We affirm in part, and remand in part.

Fabio and Maria Kato (the Katos) are natives of Brazil. While visiting New Jersey in 2015, they had a son, Davi H. Kato, who was born with cerebral palsy. The Katos filed a lawsuit alleging medical malpractice that resulted in injury to Davi. In 2018, the parties reached a settlement of $5,700,000. When the court approved this settlement, the Chancery Division judge also approved the creation of the Davi H. Kato Special Needs Trust (the special needs trust), which was funded with $3,147,486.42 of the settlement. Maria Kato was the settlor, and Cavadas-Cabelo and OceanFirst Bank (OceanFirst) were named as trustees.

Cavadas-Cabelo is a New Jersey attorney who came to know the Katos through his mother, who served as a Portuguese translator for the Katos regarding Davi's therapy, Early Intervention Program, and school. When the Katos decided to file a lawsuit, Cavadas-Cabelo helped them find an attorney who had experience with similar medical malpractice lawsuits. According to

Fabio Kato, the Katos selected Cavadas-Cabelo as a trustee because they believed he spoke fluent Brazilian Portuguese, which would make administration of the trust easier. It turned out, however, that—while he spoke Portuguese—Cavadas-Cabelo did not speak Brazilian Portuguese.

In September 2021, OceanFirst filed suit to modify the agreement between the bank and Cavadas-Cabelo as co-trustees regarding administrative duties and the division of fiduciary commissions, alleging the language barrier had caused a deterioration in the relationship between the Katos and Cavadas-Cabelo that interfered with OceanFirst's ability to effectively administer the trust.

The Katos filed a crossclaim to remove Cavadas-Cabelo as co-trustee and appoint someone else. According to Fabio Kato, Cavadas-Cabelo sent texts and emails to the Katos in English, rather than in Brazilian Portuguese. Aside from the communication problems, Fabio complained Cavadas-Cabelo consistently refused to consent to trust expenditures for Davi's benefit.

In 2022, the Katos and Davi moved back to Brazil. In his certification, Fabio Kato explained they had family and friends there and had no intention of returning to the United States. They notified the Monmouth County Division of Social Services that they had moved and requested Davi's Medicaid benefits be terminated since he would no longer be a resident of New Jersey.

3

The Katos then moved to terminate the special needs trust and create a new irrevocable trust with OceanFirst and a newly named individual as co-trustees. They also requested attorneys' fees. The special needs trust had been created, in part, so Davi could qualify for Medicaid while the family lived in New Jersey. Because the family had moved out of the United States and Davi was, therefore, no longer eligible for Medicaid, the special needs trust no longer filled that need.

OceanFirst supported the motion. Cavadas-Cabelo opposed it, contending termination of the trust was not in Davi's best interests and suggesting the Katos wished to terminate the trust so they could use the funds for their own purposes.

After hearings in June and September 2022, the court terminated the special needs trust under N.J.S.A. 3B:31-28(a) because the Katos had shown there were unanticipated circumstances—namely, the Katos' relocation to Brazil. The court also found the creation of a new trust was warranted under N.J.S.A. 3B:12-2. OceanFirst continued as a trustee and a new co-trustee was appointed. The court further found that Cavadas-Cabelo had not acted with any animus in administering the trust, Cavadas-Cabelo recognized he had an obligation to Davi, and any tension between him and the Katos resulted from

4

"respectful disagreements."  The court approved the counsel fees, paid from the funds of the trust, of both the Katos and Cavadas-Cabelo.

On July 29, 2022, Cavadas-Cabelo moved for settlement of the form of order, requesting a commission of $72,435.67 be paid to him.  On September 26, 2022, the trial judge entered an order:  (1) granting the Katos' motion; (2) denying Cavadas-Cabelo's motion; (3) creating the Davi H. Kato Irrevocable Trust (irrevocable trust); (4) appointing co-trustees of the irrevocable trust; (5) ordering immediate payment of the Medicaid lien due the State of New Jersey from the special needs trust; (6) ordering payment from the special needs trust of a $31,738.41 termination commission to Cavadas-Cabelo and noting that OceanFirst waived "any further commissions"; (7) through (10) ordering payment from the special needs trust of the outstanding balance of costs and fees separately due the Katos' counsel, Cavadas-Cabelo's counsel, and OceanFirst's counsel; (11) disbursing the balance of the special needs trust to the co-trustees of the irrevocable trust and terminating the special needs trust; and (12) dismissing OceanFirst's complaint, Cavadas-Cabelo's counterclaim; and the Katos' cross-claim.

This appeal followed.

A-0414-22

We review a trial court's interpretation and application of a statute de novo. In re Estate of Brown, 448 N.J. Super. 252, 268 (App. Div. 2017) (citing Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 215 N.J. 409, 421 (2013)); Meehan v. Antonellis, 226 N.J. 216, 230 (2016). However, the appellate court must defer to the trial court's factual findings when they are "supported by adequate, substantial, credible evidence." Brown, 448 N.J. Super. at 268; Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

Corpus commissions are reviewed for an abuse of discretion. Bank of New Jersey v. Abbott, 207 N.J. Super. 29, 38 (App. Div. 1986) (quoting In re Moore's Estate, 50 N.J. 131, 149 (1967)). And while the interpretation and application of the law when awarding counsel fees is reviewed de novo; the amount awarded is reviewed under the abuse-of-discretion standard. In re Guardianship of DiNoia, 464 N.J. Super. 562, 566-67 (App. Div. 2019).

Cavadas-Cabelo argues the Katos' move to Brazil was anticipated by the settlor, Maria Kato, and thus the court did not have the authority to terminate the special needs trust. He contends the Katos were contemplating moving back to Brazil before the creation of the special needs trust and the Katos threatened to move back to Brazil after the trust was created when he told them they could not receive a monthly allowance. Cavadas-Cabelo also argues there was no need

6

to terminate the special needs trust just because Davi was no longer eligible for Medicaid. We disagree.

The governing standard is whether termination or modification would "further the purposes of the trust." N.J.S.A. 3B:31-28(a). The relevant question is whether the purposes of the trust would be better served by modifying or terminating the trust. One purpose of the special needs trust was to maintain Davi's eligibility for Medicaid. The special needs trust was also intended, however, "to ensure that [Davi] be maintained, to the greatest extent possible, in an independent environment to allow [Davi] to maximize [his] potential, academically, professionally, and socially." As the trial court observed, "the purpose behind creating the special needs trust, which was to augment the availability of governmental assistance[,] . . . [wa]s no longer a factor" because Davi became ineligible for Medicaid. The court also noted continuation of the special needs trust would result in "unnecessary" expenses for "notifications, accountings, [and] delays . . . ."[1]

---

[1] With a special needs trust, so long as the Medicaid program had an "outstanding right of reimbursement" (which, presumably, it would until termination of the special needs trust), a trustee must provide notice to the New Jersey Division of Medical Assistance and Health Services (DMAHS) of expenditures over $5,000, forty-five days in advance. Further, the trustee of the special needs trust had to file an annual accounting with DMAHS. Perhaps most

A-0414-22

With the irrevocable trust, these burdens would not exist, and Davi would have the "absolute right to demand and receive . . . the remaining principal of [the irrevocable] trust" when he turns eighteen. Thus, we agree with the trial court that, without the attraction of keeping the funds out of Medicaid's reach, the purpose of the trust—to benefit Davi—is better served by the irrevocable trust; it is more easily administered and gives Davi greater access to his funds.

We also reject Cavadas-Cabelo's argument the trial court lacked authority to create a new trust under N.J.S.A. 3B:12-1. N.J.S.A. 3B:12-1 provides a court with the power to authorize a protective arrangement when "a minor . . . has property or an interest therein which may be wasted or dissipated[,] or . . . a basis exists for affecting the property or interest and affairs of a minor, . . . or . . . funds are needed for the support, care[,] and welfare of the minor . . . ." Permissible protective arrangements include the establishment of "a suitable trust." N.J.S.A. 3B:12-2. After finding the termination of the special needs trust was appropriate due to circumstances unanticipated by the settlor, the trial court here had the power to protect Davi's assets by establishing a new trust.

importantly, the special needs trust would exist until Davi no longer had a disability—what seems to be an unlikely occurrence—or died.

8

We reject Cavadas-Cabelo's initial argument for an upward adjustment of his commission, but we accept his alternative argument. Cavadas-Cabelo first contends the court erred in reasoning the statute permitted proration. The court did not pro-rate the commission but found, because Cavadas-Cabelo had already been paid the portion of the commission he had earned, there was no need to award him any more of the annual commission. Cavadas-Cabelo next asserts that, even if the interpretation regarding proration was proper, the court incorrectly calculated his commission. We find the court did err in calculating his commission, but not in the way Cavadas-Cabelo suggested.

"[U]pon termination of the trust . . . the fiduciary may take a commission on corpus distributed . . . ." N.J.S.A. 3B:18-28. If the trust is terminated "within [five] years of the date when the corpus is received by the fiduciary," the fiduciary may take a commission in "an amount equal to the annual commissions on corpus authorized pursuant to N.J.S.[A.] 3B:18-25, but not actually taken by the fiduciary, plus . . . [two percent] of the value of the corpus distributed." N.J.S.A. 3B:18-28(a). The statute also provides "[i]f there are two or more fiduciaries, their corpus commissions shall be the same as for a single fiduciary plus an additional amount of one-fifth of the commissions for each additional fiduciary." N.J.S.A. 3B:18-28(d).

A-0414-22

The annual commission agreed to by Cavadas-Cabelo and OceanFirst was 1.68% for the two of them. The value of the corpus at the time of termination was $3,173,840.63. During his tenure as co-trustee, Cavadas-Cabelo received his annual commission in monthly payments. In the first five months of 2022, before the special needs trust was terminated at the beginning of June, Cavadas-Cabelo received $15,532.13 of his annual commission for 2022.

We read the plain language of N.J.S.A. 3B:18-28 in the context of other related provisions. The first issue is what is meant by "an amount equal to the annual commissions on corpus . . . , but not actually taken by the fiduciary." Thus, it is helpful to examine the meaning of "annual commissions." The statute governing annual commissions, N.J.S.A. 3B:18-25, provides trustees "may annually . . . take commissions on corpus . . . ," N.J.S.A. 3B:18-25(a), that is, once a year. The statute does not contemplate monthly payments.

The question here is whether a trustee should be given an annual commission for a year he did not complete. Neither the termination commission statute nor the annual commission statute—nor any other statute concerning commissions—addresses this issue. No provision requires paying a trustee the

portion of the annual commission he earned in the year a trust is terminated.[2]

Thus, we discern no error or abuse of discretion in the trial judge's conclusion that a trustee is only owed an annual commission upon completion of a full year.

N.J.S.A. 3B:18-28(d) provides that, if there are two or more trustees, "their corpus commissions shall be the same as for a single [trustee] plus an additional amount of one-fifth of the commissions for each additional [trustee]." Cavadas-Cabelo's calculation of his one-fifth portion would incorrectly include his commission for the part of 2022 he was not a trustee. The correct calculation, not including a commission for 2022, results in Cavadas-Cabelo's share of the total termination commission being $38,086.09.[3] The trial court should thus amend the September 26, 2022 order granting Cavadas-Cabelo a corpus termination commission, pursuant to N.J.S.A. 3B:18-28, of $38,086.09.

Any remaining arguments raised by the parties are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

[2] Nonetheless, Cavadas-Cabelo had already collected a portion of his commission for the year the special needs trust was terminated.

[3] 2% of the value of the corpus ($3,173,840.63) is equal to $63,476.81. One-fifth of that amount ($12,695.36) is added to arrive at the total termination commission ($76,172.17). This is then divided between the two co-trustees, so each one is due $38,086.09, but "OceanFirst Bank has waived its right to receive any further commissions."

Affirmed in part, remanded in part for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0414-22