THOMAS D. BLAUVELT, PLAINTIFF-APPELLANT v. THE CITIZENS TRUST COMPANY ET AL., DEFENDANTS-RESPONDENTS.

Argued November 14, 1949—Decided February 6, 1950.

546

*Mr. Hymen D. Goldberg* argued the cause for the appellant. *Mr. Isadore Rabinowitz,* of counsel.

*Mr. Edward F. Merrey, Jr.,* argued the cause for the respondent, The Citizens Trust Company (*Messrs. Merrey & Merrey,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an appeal from a judgment of the Superior Court, Chancery Division, approving the final account of a trustee under a will. There is a cross-appeal by the trustee from the amount of commissions allowed by the Chancery Division. The appeal is addressed to the Appellate Division of the Superior Court, but has been certified on our own motion.

The plaintiff is one of the beneficiaries of the will of Franklin A. Blauvelt, deceased; the suit was instituted by him against the Citizens Trust Company, the executor and trustee under decedent's will, seeking a construction of the will and an accounting. Plaintiff's brother, the latter's daughter, and the two children of the plaintiff, all of whom had an interest under the will, refused to join as plaintiffs and were made defendants.

The essential question involved is whether the defendant Trust Company should be surcharged for losses sustained by the trust estate during its administration thereof over a period of approximately twenty years.

The basic problem has received the attention of our courts on numerous occasions with varying determinations being made, dependent upon the context of the will, the conditions prevailing at the time of the will's execution and during the administration of the trust and the conduct of the fiduciary

in relation thereto. These factors, accordingly, are the focal points of inquiry.

Testator's will provided for legacies to his grandchildren in the amount of $2,000; it then directed that his widow have the use of his home and furnishings during her lifetime. The residue of the estate was given to the executor, in trust, to pay from the income thereof a monthly allowance of $150 to his widow, with any income in excess of that amount to become a part of the *corpus,* and at her death to pay the income in equal shares to the testator's two sons, Thomas D., the plaintiff, and Floyd A., during their lifetime, and upon the death. of the survivor to divide the *corpus* into two equal parts and pay one of such parts to the children of each of said sons. The will gave the executor a general power to sell the real estate and provided that, until sold, the executor be empowered to pay taxes and assessments, interest upon encumbrances and other charges against the real estate out of the residuary estate. It then provided as follows:

"And I also authorize and empower my said executor to retain indefinitely any stocks and bonds of which I may die seized until such time or times as my said executor in its judgment and discretion shall dispose of and sell the same; and I do hereby order and direct that no liability shall attach to my said executor for any depreciation in the value of any such said investments while being so held by them."

The will was dated November 15, 1926. The testator died less than four months later on March 1, 1927, leaving the following estate: 470 shares of stock in a laundry company, a mill property, the house in which he had lived and liquid assets of $1,500, consisting of a bank account of $1,300 and a certificate valued at $200. In the inventory the stock was appraised at $32,900; the mill property was valued by the executor at $25,000; and the home at $7,500 in the return to the New Jersey Inheritance Tax Department. The New Jersey Inheritance Tax Commissioner appraised the assets at somewhat higher figures; the stock was appraised at $39,545, the mill property at $29,000; and the homestead at $9,500. The mill property was encumbered by a $10,000 mortgage and the homestead by a $5,500 mortgage. On the basis of the executor's valuation, the net residuary estate, after

allowance for encumbrances, legacies, funeral and administration expenses, taxes, etc., amounted to approximately $45,000.

The main asset of the estate was the laundry company stock. A history of this stock is appropriate. For some years the testator, with the assistance of his two sons, had operated a laundry business in the mill property as a sole proprietorship. On November 29, 1926, fourteen days after making his will and approximately three months prior to his decease, the testator incorporated the business and had 500 shares of stock issued. He arranged for 470 shares of said stock to be issued to himself, 10 shares to each of his two sons and the remaining 10 shares to another employee.

The factual development of events following testator's death is as follows: The laundry business continued in operation for approximately 20 years, with the two sons and the stockholding employee serving as officers, directors and employees thereof; the widow remained in possession of the home until her death in September, 1935, and from the rentals received from the occupancy by the laundry company and the relatively small rentals from the additional tenant of the mill property, the sum of $150 each month was paid to her until March, 1932; the legacies were paid; the several items of funeral and administration expense including inheritance taxes were paid; taxes and interest on the mortgage against the home and mill property were currently paid; the home was deeded to the mortgagee in 1938 in lieu of foreclosure; the rents were collected by the estate from the laundry company and a silk manufacturing company over part of the 20-year period for the use of the mill property; the mill property was sold in 1944 for $20,000 with the $10,000 mortgage encumbrance being satisfied out of the proceeds of sale; and the laundry business was sold in 1947 for a sum sufficient to satisfy all of its creditors but leaving nothing for distribution to the stockholders.

After the sale of the laundry business and dissolution of the corporation in 1947, the plaintiff instituted the present litigation.

The Chancery Division heard and disposed of all issues raised, approved the trustee's account, allowed commissions

and counsel fees, and ordered the trustee, after payment of the commissions and counsel fees so allowed and all taxed costs from the full balance of $10,187.11 in the hands of the trustee, to pay to Floyd A. Blauvelt, executor of the last will of Rose Ella Blauvelt, the balance thereof, but not more than the sum of $6,255, "the unpaid balance of her monthly allowance under the will of Franklin A. Blauvelt."

The gravamen of the complaint is that the defendant trustee mismanaged the estate and is liable for all resultant loss. The plaintiff charges dereliction on several specific counts. His first point is that the trustee had no authority to continue the laundry business without first obtaining approval therefor from the former Orphans' Court pursuant to *R. S.* 3:7–77, and cites *Gilligan v. Daly,* 79 *N. J. Eq.* 36 (*Ch.* 1911), and *Kick v. McCauley,* 118 *N. J. Eq.* 252 (*E. & A.* 1934), in support of the proposition that the failure of a fiduciary to obtain authorization from the court, pursuant to the statute, to continue a business of a decedent creates an absolute liability for all resultant loss. It would appear from *In re Roth's Estate,* 139 *N. J. Eq.* 588 (*Prerog. Ct.* 1947), that, despite *R. S.* 3:7–77, the former Chancery Court was the proper court from which such approval should have been obtained, if necessary. That case held that the authority to give instructions to a trustee had always been within the jurisdiction of the former Chancery Court and that the legislature could not impair the jurisdiction of Chancery by giving another tribunal concurrent jurisdiction of a subject matter which, at the time of adoption of the former Constitution, belonged exclusively to Chancery. However, it is sufficient in disposing of the point to say that the cases cited by the plaintiff are inapplicable because they dealt with sole proprietorship and partnership interests of the decedents and not, as here, with the ownership of stock in a corporation. The premise that the laundry business was being operated by the defendant trustee is incorrect. The business of a corporation is operated by and under the direction and authority of its board of directors. *R. S.* 14:7–1. The ownership by the defendant in its representative capacity, of the controlling

interest of the outstanding stock conferred no power upon the defendant to bind the corporation. *Clement v. Young-McShea Amusement Co.*, 70 *N. J. Eq.* 677 (*E. & A.* 1905); *D'Arcangelo v. D'Arcangelo*, 137 *N. J. Eq.* 63 (*Ch.* 1945). The corporate business in the present case was being operated by the board of directors of which the plaintiff was a member. Plaintiff contends that the business should have been sold within one year after testator's death but it does not appear that the directors or any of them ever indicated a desire that the business be so sold.

The second point advanced by the plaintiff is that the defendant was negligent in not selling the stock shortly after testator's death and using the proceeds thereof to liquidate the obligations of the testator and administer the trust pursuant to the will. The expressed intent of the testator was that certain legacies be paid to his grandchildren, that his widow be maintained in reasonable circumstances during her life, that his sons then receive the income from the residuary estate during their lives and that his grandchildren then receive the *corpus* thereof. Since there were insufficient liquid assets to entirely pay the legacies, debts and administration expenses, obviously the only personal property which might have been sold to raise funds for such purposes was the stock of the laundry company. A sale of the mill property without a sale of the stock in the laundry company might well have jeopardized the possession of the laundry company. The testator did not contemplate or intend that this stock be sold for such purpose.

██ It is axiomatic that in the judicial construction of a will and a determination of the rights and duties of persons thereunder, one of the primary considerations is to ascertain the intention of the testator. Such intent is to be gathered from the will in the light of the circumstances surrounding the testator at the time of the will's execution. This principle stands forth in our cases extending over the years. *Morris v. Ex'rs of Thomson*, 16 *N. J. Eq.* 542 (*E. & A.* 1863); *Coffin v. Watson*, 78 *N. J. Eq.* 307 (*Ch.* 1911); affirmed, 79 *N. J. Eq.* 643 (*E. & A.* 1912); *Coyle v. Donaldson*, 91 *N. J.*

*Eq.* 138 (*E. & A.* 1918) ; *Peer v. Jenkins*, 102 *N. J. Eq.* 235 (*E. & A.* 1928). See also 2 *Page, Wills,* 3d *Ed.* 1941, § 914, and *Clapp, Wills and Administration in New Jersey* (1937), § 51, and cases therein cited. In *Reed v. Schuh*, 136 *N. J. Eq.* 11 (*Ch.* 1944), the court, following *Wiggins v. Wiggins*, 65 *N. J. Eq.* 417 (*Ch.* 1903), held that consideration should be given to the pecuniary and family situation of the testator.

██ At the time of his death and for some years prior thereto the business was prospering and had furnished a living for testator and his two sons for some time. At the time of death, in 1927, business generally was at its peak and there appeared to be no reason why the specific laundry business would not continue to flourish. It is significant that within two weeks of the date testator made his will, he incorporated his business. It is significant that in his will he empowered his executor to retain indefinitely any stocks of which he might die seized, and that the only stock of which he died seized was the stock in the laundry business. The reasonable inference arising from the proximity of the dates of incorporation and the execution of the will is that the testator had the laundry company stock in contemplation when he referred to stock in his will. It is reasonable to believe that the testator expected that his estate would have sufficient liquid assets to pay the small legacies, the debts, administration and related expenses, and that the laundry business would prosper sufficiently to provide the funds necessary to pay his widow $150 per month from the income from the rental by the corporation of a portion of the mill property and dividends and that the excess of income therefrom, as well as the rental income from the silk manufacturing company which occupied a part of the mill property as a tenant, would enhance the *corpus*. At the testator's death in 1927, the defendant, in its fiduciary capacity, was faced with the problem of adopting a course of conduct consistent with required legal standards and compatible with the administration of the estate in accordance with the testator's intent. The will specifically empowered the defendant to retain the stock indefinitely in the latter's discretion and directed further that no liability attach for

any depreciation in value while being so retained. While consideration is given to such exculpatory provisions the courts construe them strictly and there appears to be a tendency to view such provisions with a searching scrutiny of the relation existing between the parties and the circumstances of the insertion of such a clause in a trust instrument. See *Scott on Trusts, Vol. 2, par. 222, p.* 1174 *et seq.*, for a full discussion of the subject. Our courts have applied a strict construction to such exculpatory clauses. *Tuttle v. Gilmore,* 36 *N. J. Eq.* 617 (*E. & A.* 1883); *Conover v. Guarantee Trust Co.,* 88 *N. J. Eq.* 450 (*Ch.* 1917); affirmed, 89 *N. J. Eq.* 584 (*E. & A.* 1918); and have said that they do not relieve a trustee of liability where a loss results from negligence in the administration of the trust. *Liberty Title & Trust Co. v. Plews,* 142 *N. J. Eq.* 493 (*Ch.* 1948); *Dickerson v. Camden Trust Co.,* 140 *N. J. Eq.* 34 (*Ch.* 1947); affirmed, 1 *N. J.* 459 (*Sup. Ct.* 1949). The conduct of the trustee then is to be measured by the principle that a trustee owes an obligation to the *cestuis* and a duty to exercise that degree of care, prudence, circumspection and foresight, that an ordinary prudent person would employ in like matters of his own. See *In re Griggs,* 125 *N. J. Eq.* 73 (*Prerog. Ct.* 1939); affirmed, *sub nom In re Paterson National Bank,* 127 *N. J. Eq.* 362 (*E. & A.* 1940); *In re Buckelew's Estate,* 128 *N. J. Eq.* 81 (*Prerog. Ct.* 1940); *In re Ebert,* 136 *N. J. Eq.* 123 (*Prerog. Ct.* 1945); *Braman v. Central Hanover Bank & Trust Co.,* 138 *N. J. Eq.* 165 (*Ch.* 1946); *Dickerson v. Camden Trust Co., supra.* Also *cf. R. S.* 3:16–12.

 No evidence was presented by the plaintiff that the stock could have been sold shortly after testator's death. Since the corporation was a close family one and operated by persons financially interested, a market for sale was problematical. If the subsequent economic debacle could have been foreseen in 1927 the defendant would have had little choice but to have attempted to sell the stock. In the light of circumstances then existing, however, the sale or retention of the stock was a matter left by the testator to the judgment of the defendant. The defendant elected to retain the stock as a

result of which some of the purposes of the will were accomplished while others were not. The plaintiff urges that the defendant's retention of the stock constituted negligence creating liability upon defendant for resultant losses and relies upon *Dickerson v. Camden Trust Co., supra; In re Ward's Estate,* 121 *N. J. Eq.* 555 (*Prerog. Ct.* 1936); affirmed, 121 *N. J. Eq.* 606 (*E. & A.* 1937). These cases dealt with the retention of investment contrary to the alleged directions of the will. Such cases are not apposite. There is a distinction to be drawn in this class of cases between actions of a fiduciary which are contrary to directions, actions which are unauthorized, and actions resulting from errors of judgment. It is pointed out in *Conover v. Guarantee Trust Co., supra,* that a distinction between unauthorized acts and errors of judgment in the performance of authorized acts was recognized as early as 1852 in *Quick's Executors v. Fisher,* 9 *N. J. Eq.* 802 (*E. & A.* 1852). In the present case the defendant did not act contrary to the directions in the will nor without authority. Since the defendant did not violate any specific directions in the will the question to be resolved is whether the retention of the stock constituted negligence. We are unable to view the conduct of the defendant as amounting to negligence in the light of the context of the will and the attendant circumstances. As previously indicated, the laundry business had been successfully operated prior to testator's death, and the general and specific business picture, at the time of testator's death, appeared to be most healthy. Later its financial income was affected by general business conditions. To charge the trustee with negligence in not foreseeing the catastrophic collapse in the world's economy which ensued within a few years of testator's death would be to impose upon the trustee the requirement that it exercise a rare degree of prescience.

The business continued to be sufficiently well operated for approximately five years after testator's death to provide funds for the payment of debts, legacies and current obligations under the trust including the monthly payments to the widow. Thereafter the trustee sought to sell the stock but without

success. Further, there was no proof offered that the stock could have been sold for any substantial amount during the period of administration. See *In re Pettigrew's Estate,* 115 *N. J. Eq.* 401 (*Prerog. Ct.* 1934) ; affirmed, 116 *N. J. Eq.* 566 (*E. & A.* 1934).

Moreover, we have the situation of the plaintiff now complaining of conduct upon the part of the trustee in which the plaintiff acquiesced for a period of twenty years. Does such acquiescence estop the plaintiff from challenging the stewardship of the defendant? Our cases on this subject hold that acquiescence will preclude charges against a trustee for losses sustained through the retention of investments where the *cestui* had full knowledge of the facts, knew his legal rights, was under no disability to assert them, and refrained from objecting. See *McAllister v. McAllister,* 120 *N. J. Eq.* 407 (*Ch.* 1936; affirmed, 121 *N. J. Eq.* 264 (*E. & A.* 1937) ; *In re Shaw's Estate,* 122 *N. J. Eq.* 536 (*Prerog. Ct.* 1937) ; *Ross v. Savings Investment Co.,* 123 *N. J. Eq.* 288 (*E. & A.* 1936) ; *Rothenberg v. Franklin-Washington Trust Co.,* 127 *N. J. Eq.* 406 (*Ch.* 1940) ; mod., 129 *N. J. Eq.,* 361 (*E. & A.* 1940) ; *Pennsylvania Co., etc., v. Gillmore,* 142 *N. J. Eq.* 27 (*Ch.* 1948) ; *Liberty Title & Trust Co. v. Plews, supra; Dickerson v. Camden Trust Co., supra.* Let us consider the factual situation in this connection in the present case. At the time of testator's death, the plaintiff was 51 years of age; he was a stockholder, a director, an officer and an employee of the laundry company for the full period of the company's operation from the date of testator's death until the business was sold and the corporation was dissolved in 1947; he lived with his mother until her death in 1935, during which time monthly payments provided for in the will were not made to his mother over a period of more than three years because of insufficient income; he continued to live in the homestead until it was deeded to the mortgagee in 1938; his wife had made a loan of $2,500 to the laundry company; while the testimony shows that there were discussions between the brothers concerning the advisability of a sale, it does not show that the plaintiff ever expressed any desire that the business be

sold but indicated rather than he was fully content, as was his brother, to the retention and continued operation thereof. To·say that the plaintiff, under the above circumstances, did not have full knowledge of the factual situation and did not act deliberately in acquiescing in the course of conduct of the trustee is to be unrealistic.

Another point raised by the plaintiff is that the trustee should have paid the mortgages, totalling $15,000, against the homestead and the mill property within one year after testator's death and that interest payments made by the defendant thereafter should not be allowed as proper items of expense. It is sufficient to say that since there were no funds in the estate with which to pay the mortgages a sale of the laundry stock would have been required for that purpose. We have already concluded that the defendant was not negligent in retaining the stock and it necessarily follows that it should not be surcharged for any failure on its part to pay the mortgages. Moreover, it appears from the will that the testator intended that the mortgages be paid out of the proceeds of the sale of the real estate. The will authorized the executor to sell the real estate at such times and prices as the executor should determine but provided that until sold the executor was to pay, *inter alia,* the interest upon encumbrances.

The next point urged by the plaintiff relates to uncollected rentals for the use of the mill property by the laundry company. It appears that while the laundry company normally paid rent for the use of the mill property, where the business was located, there were several years during the depression when the defendant trustee did not insist upon a rental being paid. Under the circumstances, for the trustee as landlord to have insisted on the laundry company paying rent, might well have precipitated the company's earlier demise and operated to the detriment of the entire trust estate. It comes with ill grace for the plaintiff who was one of the beneficiaries of the defendant's forebearance and who as one of the officers and directors of the defaulting corporation was chargeable with seeing that the rent was paid, to now seek redress from

the defendant for a dereliction for which, in part, the plaintiff was legally responsible. Further, at the time of the sale and dissolution of the corporation the plaintiff, as one of the directors, became a trustee for winding up the corporate affairs, *R. S.* 14:13–5; as such a trustee the plaintiff shared a responsibility with the other directors to see that any rentals owing by the corporation were paid to the defendant, at least on a basis comparable to the payment of debts owing to other creditors. It is our conclusion that there is no merit to the plaintiff's contention on this point.

The final question to be considered relates to the allowance of commissions. The executor's accounting had been allowed by the Passaic County Orphans' Court on July 6, 1928. The trustee's intermediate accounting had been allowed by the Passaic County Orphans' Court on October 8, 1931. The next and final accounting of the trustee was filed with the former Chancery Court pursuant to an order of that court made on June 21, 1948, in the proceedings now under review. The Chancery Division, in approving the 1948 account of the trustee, allowed a commission on *corpus* based upon the sale price of the mill property. This property was sold in 1944 for $20,000, from which proceeds the balance remaining due on the $10,000 mortgage against said property was paid. The plaintiff takes the position that since the mill property was subject to the $10,000 mortgage at the time of testator's death the actual equity in the property coming into the trustee's hands was the value of the property less the amount of the mortgage, and that commissions should be based upon the actual equity of the property rather than upon the sale price. In fact, the entire selling price was received by the trustee and disbursements in payment of the mortgage debt, real estate agent's commissions on the sale, revenue stamps on the deed and cancellation of the mortgage were made by the trustee. *Corpus* commissions were allowed on the 1948 accounting on the sum of $20,153.30, being the entire amount of *corpus* coming into the trustee's hands since the previous accountings in 1928 and 1931. They were computed in the amount of $924.59 in accordance with the graduated schedule

of percentage provided by the statute then in effect (*R. S.* 3:11–2 as amended by *P. L.* 1940, *c.* 172, *p.* 530) where *corpus* receipts did not exceed $50,000. Since the total *corpus* receipts clearly exceeded the sum of $50,000, we conceive this to be error. The trustee charged itself in the 1948 accounting with *corpus* receipts in the amount of $53,635.42, being a balance of $33,482.12 as shown by the previous accounting allowed in 1931 and the additional sum of $20,153.30 coming into its hands thereafter. Final *corpus* commissions should have been allowed on the basis of the actual pains, trouble, risk and services rendered during the entire trusteeship. Commissions of $1,089.39 on *corpus* and income had been allowed in the 1928 accounting. The amount of such commissions chargeable to income on *corpus* was $195.39, leaving a balance allowed as commissions on *corpus* of $894. The total *corpus* amounted to $55,853.30, being $35,700 reported in the 1928 accounting and the additional $20,153.30 reported in the 1948 accounting. Giving consideration to the pains, trouble, risk and services entirely rendered, we conclude that adequate compensation will be afforded the trustee by an allowance of commissions in the amount of 2½% of the total *corpus* received by it. (*R. S.* 3:11–2 as amended *P. L.* 1940, *c.* 172, *p.* 530.) The 1940 act was in effect at the time of the allowance of the 1948 account. Total *corpus* commissions, so computed, amount to $1,396.33; deducting the amount of $894 previously allowed, *Tucker v. Tucker,* 33 *N. J. Eq.* 235, at *page* 239 (*Prerog. Cl.* 1880) ; affirmed. 34 *N. J. Eq.* 292 (*E. & A.* 1881), we find the balance of *corpus* commissions to which the trustee is entitled to be $502.33. The *corpus* commission of $924.59 allowed by the Chancery Division is accordingly reduced to $502.33.

The plaintiff further urges that the trustee had previously been allowed commissions on the sum of $32,900, the inventory value of the stock, and that since the stock subsequently resulted in a total loss, the amount of commissions previously allowed on the value of the stock should be deducted from the trustee's total commissions. We do not agree with this contention. The allowance of commissions on the inven-

toried value of the stock was properly made because it is conceded that the stock was valued at $32,900. Since we have held that the resultant loss in the value of the stock is not chargeable to the negligence of the trustee it follows that the contention of the plaintiff on this phase of the case is resolved against him.

The trustee, by way of cross appeal, complains that the allowance by the Chancery Division of commission on income was inadequate. The 1948 account of the trustee included income from 1931 to the date of the account and amounted to $28,987.95. The Chancery Division allowed commissions at the rate of $2\frac{1}{2}\%$ on such part of said income as had been received prior to the effective date of P. L. 1939, c. 134, p. 456, and 5% on all income received thereafter. The allowance of commissions on income amounted to $1,050; the trustee urges that the allowance should have been in the amount of $1,449.39 or 5% of $28,987.95, the amount of income received since the 1931 account. We agree with the trustee's contention. The statute allowing commissions on income which was in effect in 1931 was P. L. 1898, c. 234, p. 762, § 129, and permitted, within certain limitations, the exercise of discretion by the court in allowing such commissions. The statute was subsequently amended in 1937 and again in 1939 and 1940. P. L. 1939, c. 134, pp. 456, § 2 (R. S. 3:11–2), made it mandatory that commissions be computed at 5% on all income. P. L. 1940, c. 172, p. 530, § 1 contained the same mandatory provision. The 1940 law was in effect at the time of the allowance of the 1948 account and the filing of the judgment below on May 17, 1949, R. S. 3:11–2 as amended by P. L. 1937, P. L. 1939 and P. L. 1940, was repealed by P. L. 1949, c. 225 (R. S. 3:11–2.2) but the repealer was not effective until May 24, 1949. The 1940 statute makes no distinction between income received prior or subsequent to its effective date, although the legislature must have realized at the time the 1939 and 1940 acts were passed that accountings would be subsequently filed which would include income received prior thereto. In passing, it may be noted that the 1949 act, likewise, makes no distinction

with respect to when the income is received. The language of the 1940 act clearly supports the trustee's contention. We conclude that the Chancery Division erred in this particular and that commissions on income should have been allowed in the amount of $1,449.39 rather than in the amount of $1,050.

The judgment is affirmed in all respects excepting in the allowance of commissions and to such extent is modified as herein determined.

HEHER, J., concurring in result.

*For affirmance and modification*—Chief Justice VANDER-BILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.